v.

**CABINET FOR HUMAN RESOURCES,
Commonwealth of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Dec. 20, 1985.

Discretionary Review Denied and
Opinion Ordered Published by
Supreme Court March 12, 1986.

Patricia A. Mertens, Lexington, for appellant.

William K. Moore, Frankfort, William Rambicure, Marvin Clem, Lexington, for appellee.

Before CLAYTON, DUNN and McDONALD, JJ.

McDONALD, Judge:

The Fayette Circuit Court, by judgment based upon findings of fact, terminated the parental rights of B.C.H. and J.H., the natural parents of T.M.H., born October 6, 1976, S.L.H., born September 1, 1977, and S.M.H., born September 25, 1980. Appropriate for our consideration in this appeal is only the termination of the rights of J.H., the natural father of the children. B.C.H., the mother, has not appealed, and her current whereabouts are unknown.

The background of this case shows that a cabinet social worker filed the petition to involuntarily terminate the parental rights of the respective parents, pursuant to KRS 199.603(7). The trial court found, and the record substantiates, that the cabinet furnished a great deal of assistance to this family for over a period of four years with no improvement on the part of the family. In fact, as the children grew older their circumstances became more deplorable. The assistance afforded included transportation, schooling help, homework facilities, financial aid, comprehensive care counseling, food stamps and other miscellaneous care. Other than obtaining the assistance from the cabinet, the parents exhibited little interest in the programs afforded and no interest in improving their parenting skills.

Although B.C.H. did not appeal her termination of parental rights, we feel it is necessary to mention some of the facts relating to her. B.C.H. was saddled with the burden of rearing the children because of the absence of the father, J.H. The evidence against B.C.H. as a parent reads much like an indictment. Suffice it to say that the children, while in B.C.H.'s charge and under her parental supervision, were

running wild, were emotionally disturbed due to violent confrontations between the parents, were not properly clothed, were very aggressive among themselves in their behavior, and were once left for several days with a teenaged babysitter. Ultimately, the police had to pick the children up. The children were found to be very dirty and hungry. Also, on occasion, B.C.H. would be absent from the children because of confinements in jail. Since the children have been in foster care they have thrived and developed. In fact, the trial court found that the children have done almost a complete turnaround. They are well behaved and very polite.

The focal point of this appeal is the trial court's termination of J.H.'s parental rights. At the time of trial J.H. was 41 years of age and incarcerated on an armed robbery charge which led to a further conviction of persistent felony offender. He is serving a 28-year sentence. He possesses a fifth-grade education. Previously he was in prison from 1971 to 1974, and was sent back to prison in 1980 under his present convictions. Between these two terms of imprisonment the two older children were born; S.M.H. was not born until after the appellant was incarcerated in 1980. The appellant's record further shows two drunk-driving convictions and seven public intoxication convictions. During the time that he was out of prison and with the family, social workers and witnesses testified that B.C.H. suffered from violence committed upon her by J.H., much of it demonstrated in front of the children.

J.H. claims that the trial court erred in terminating his parental rights because the cabinet failed to meet the standard of clear and convincing evidence as required by law. At the informational hearing J.H. argued that the trial court terminated his rights merely because he was incarcerated. Further, he argued that being under such a disability he could not be guilty of abandonment, neglect or abuse because he left the children in the care of their mother, B.C.H.

The trial court found by clear and convincing evidence that each of the children

"is a neglected child," and entered judgment accordingly. We affirm. Our reasoning follows.

◼ In *Matter of Adoption of Quenette*, 341 N.W.2d 619 (N.D.1983), incarceration as abandonment was the question before the North Dakota Supreme Court. That court reasoned that incarceration alone was not enough to terminate parental rights. We agree.

◼ Kentucky law is skimpy when defining abandonment. *O.S. v. C.F.*, Ky.App., 655 S.W.2d 32, 34 (1983), tells that, "Generally, abandonment is demonstrated by facts or circumstances that evince a settled purpose to forego all parental duties and relinquish all parental claims to the child." In defining "abandoned child" for purposes of a federal statute concerning a serviceman's beneficiary, *Hafley v. McCubbins*, Ky. App., 590 S.W.2d 892, 894 (1979), said:

> [Abandoned] meant neglect and refusal to perform natural and legal obligations to care and support, withholding of parental care, presence, opportunity to display voluntary affection and neglect to lend support and maintenance ... It means also the failure to fulfill responsibility of care, training and guidance during the child's formative years. [Citations omitted.]

Abandonment is a matter of intent which may be proved by external facts and circumstances; otherwise, servicemen, prisoners of war, ship captains or persons requiring prolonged hospitalization would be likely candidates to have their parental rights terminated.

◼ Wherefore, whether abandonment occurs through incarceration sufficiently to support terminating parental rights must be strictly scrutinized. Incarceration alone can never be construed as abandonment as a matter of law. If a parent is incarcerated for stealing to feed his children, surely this would not be abandonment. Would a court set aside a termination based on abandonment because of incarceration if the terminated parent's conviction was set aside?

**664**

 However, absence, voluntary or court-imposed, may be a factor to consider in determining whether the children have been neglected, as the trial court found.

KRS 199.603 points out:

(1) In a proceeding involving a dependent neglected or abused child [abandoned child not mentioned], as defined in KRS 199.011 [abandoned children not defined], the circuit court may terminate all parental rights of the parent of such child, ... if it is pleaded and proved ... that the termination is in the best interest of the child based on the existence of one (1) or both of the following conditions: (a) The child has been abandoned; or (b) The child has been ... neglected or abused.

Although an abandoned child is not defined by statute, KRS 199.011(6) does define an abused or neglected child as:

... a child whose health or welfare is harmed or threatened with harm when his parent ... inflicts or allows to be inflicted ... physical or mental injury to the child by other than accidental means; creates or allows to be created a risk of physical or mental injury to the child by other than accidental means; ... *willfully abandons* ... such child.... [Emphasis added to show abandonment becomes a factor.]

The trial court carefully and astutely avoided making a finding that the appellant had abandoned his children; instead, the court found that the appellant had substantially and continually neglected the children. The evidence is as clear and convincing to us as it was to the trial court that the children's health and welfare were harmed, that they suffered from physical hunger and were mentally injured.

J.H. contributed to the infliction of these harms while he was with the family by his violence and his failure to provide for them, but he also substantially and continuously neglected the children because, by his dedication to a criminal lifestyle which incarcerated him, he "allows to be created a risk of physical or mental injury" to the children. This court rejected this argument in *L.S.J. v. E.B.*, Ky.App., 672 S.W.2d 937 (1984);

however, unlike the parent in that case who had committed only one crime and received a two-year sentence, J.H. has indeed pursued a lifestyle incompatible with parenting.

Since it was proven that the children were neglected, as the trial court found, it is in the best interest of the children that J.H.'s parental rights be terminated.

The trial court's judgments are affirmed.

Further, pursuant to 2(a) of the order designating the case as a special appeal, the application of CR 76.20, CR 76.32, and other appropriate rules of civil procedure for further appellate steps, is reinstated effective the date of this opinion.

All concur.