v.

CABINET FOR HEALTH AND FAMILY SERVICES, Commonwealth of Kentucky, M.P.W.R., an Infant, & N.R.T., Mother, Appellees

NO. 2016-CA-000659-ME

Court of Appeals of Kentucky.

JUNE 2, 2017; 10:00 A.M.

BRIEF FOR APPELLANT: Vincent F. Mallon, Louisville, Kentucky.

BRIEF FOR APPELLEE: Erika L. Saylor, Louisville, Kentucky.

BEFORE: KRAMER, CHIEF JUDGE; ACREE AND JONES, JUDGES.

## OPINION

JONES, JUDGE:

M.P.R. appeals the Jefferson Circuit Court's Findings of Fact, Conclusions of Law, and Order terminating his parental rights over his minor child, M.P.W.R. For reasons more fully explained below, we AFFIRM.

## I. BACKGROUND

M.P.W.R. ("Child") was born on February 20, 2015, to M.P.R. ("Father") and N.R.T. ("Mother"). Less than a month after his birth, Child was removed from parental custody and placed in temporary custody of the Cabinet for Health and Family Services (the "Cabinet") due to him testing positive for amphetamines and his parents' histories of substance abuse and domestic violence. Father was present at the removal hearing, and the court ordered him to have supervised visits with Child, to submit to random drug screenings, to attend three Alcoholics Anonymous or Narcotics Anonymous meetings a week, and to complete individual counseling. Child spent the first four weeks of his life in intensive care withdrawing from amphetamines. After leaving the hospital, Child went to live with his foster parents, with whom he still resides.

In May of 2015, both Mother and Father stipulated to abuse and neglect of Child. That same day, the Court reissued its previous treatment orders to Father, as he had failed to comply with them. On June 1, 2015, Father appeared in the Bullitt County Court on previous criminal charges. Father was drug tested and tested positive for methamphetamines, buprenorphine, and THC, for which he was held in contempt of court. Father received a probated ten-year sentence on the criminal charges. Later in June, Father again appeared in court for contraband charges. His probated sentence was revoked. Father has been in custody since June 1, 2015.

On December 21, 2015, the Cabinet filed a petition for involuntary termination of parental rights ("TPR"). Mother voluntarily terminated her parental rights on March 24, 2016. On March 25, 2016, the trial court held a hearing on the TPR petition. The Child's foster mother and the Child's social worker, Sara Wilson, testified on behalf of the Cabinet. Father appeared telephonically and testified on his own behalf. Ms. Wilson testified that she received the case file for Child on April 20, 2015. A review of her notes indicated that the previous investigative worker for the Cabinet had reached out to Father on March 20, 2015, and spoke with him about scheduling a meeting to put together a case plan for Father. While Father indicated interest in doing so, he did not come to the meeting. The records stated that the investigative worker attempted to contact Father three additional times, but received no response. Further, the records indicated that Father had submitted to drug screening once, on April 27, 2015. At that time he tested positive for oxycodone. Ms. Wilson testified that, once she received the case file, she attempted to contact Father several times, both via mail and telephone, but was never able to get in contact with him. In May of 2015, Ms. Wilson met with Child's paternal grandmother, who expressed interest in obtaining custody of Child. Child's grandmother told Ms. Wilson that she had no way to get in touch with Father. She later decided against pursuing custody of Child, and the Cabinet's evaluation of her home did not support placing Child in her custody. Ms. Wilson stated that in December of 2015, she sent a letter containing a potential case plan to Father at the Henderson County jail, where he was being held at that time, and requested that Father contact her. He did not do so. Additionally, Ms. Wilson testified that Father has never made child support payments and has never visited with Child. She stated that, even if Father were to be released on shock probation, it would be at least two months before Father could initiate visits with Child, and several more months before reunification could be considered.

Father testified that he was unaware of the requirements for him to attend counseling and drug screenings, although he acknowledged that he was present in court on the days those orders were issued. He stated that he never received the case plan sent to him by Ms. Wilson. Father vehemently opposed termination of his rights over Child. He stated that he was unable to take part in drug counseling programs at this time, but that he had prepared applications to begin doing so when able. Father acknowledged that he had never visited with Child and that he had never sent Child any kind of support, either before or after being incarcerated; however, Father contended that the he did not know to whom he should send support. Father espoused his belief that he would be able to form a bond with Child, and stated that he had recently received $8,000.00 in inheritance, which he intended to use to obtain a home for himself and Child upon his release.

The trial court entered its Findings of Fact and Conclusions of Law and Order terminating Father's parental rights on April 5, 2016. This appeal by Father followed.

## II. STANDARD OF REVIEW

Trial courts are afforded a great deal of discretion in determining whether termination of parental rights is warranted. *M.P.S. v. Cabinet for Human Res.*, 979 S.W.2d 114, 116 (Ky. App. 1998). Accordingly, appellate courts will not set aside the trial court's findings of fact unless they are clearly erroneous. CR [1] 52.01. Findings of fact are clearly erroneous only if there exists no substantial evidence in the record to support them. *Yates v. Wilson*, 339 S.W.2d 458 (Ky. 1960). "The standard of proof before the trial court necessary for the termination of parental rights is clear and convincing evidence." *V.S. v. Commonwealth of Kentucky, Cabinet for Human Res.*, 706 S.W.2d 420, 423 (Ky. App. 1986). "Clear and convincing proof does not necessarily mean uncontradicted proof. It is sufficient if there is proof of a probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent minded people." *Rowland v. Holt*, 253 Ky. 718, 70 S.W.2d 5, 9 (1934).

## III. ANALYSIS

In Kentucky, the involuntary termination of parental rights is governed by KRS [2] 625.090. Under that statute, termination of parental rights is proper upon satisfaction of a three-pronged test. First, the child must be found to be abused or neglected, as defined in KRS 600.020(1). KRS 625.090(1). Second, the court must find that at least one of the enumerated factors in KRS 625.090(2) is present. Finally, the court must find that it is in the best interest of the child that parental rights be terminated. KRS 625.090(3). Both Mother and Father had stipulated to abuse and neglect of Child, so the trial court's analysis dealt only with the second and third prongs of the test.

The trial court determined that grounds for termination existed under KRS 625.090(2)(a), (e), and (g). That is, the court found that: Father had abandoned Child for a period of not less than ninety days; that for a period of not less than six months, Father had continuously or repeatedly failed or refused to provide essential parental care or protection for Child, and there was no reasonable expectation of improvement; and that Father, for reasons other than poverty alone, is incapable of providing essentials reasonably necessary

---

1. Kentucky Rules of Civil Procedure.

2. Kentucky Revised Statutes.

and available for Child's well-being, and there was no reasonable expectation of improvement. In determining what was in Child's best interest, the trial court addressed each of the determining factors listed in KRS 625.090(3), and found as follows:

In this case, as to the first factor … there is no evidence that mental illness or mental retardation is a significant issue.

Regarding the second factor, for "[a]cts of abuse or neglect … toward any child in the family," … the evidence presented at trial is clear that [Child] has been abused or neglected within the meaning of KRS 600.020(1) while in parental custody. This resulted from [Child's] being subjected to neglect of his material, emotional, and healthcare needs and to having been abandoned for a period of not less than ninety (90) days. [Child] has been further abused or neglected by [Father's] failure or inability to comply with this Court's remedial orders and the Cabinet's court-approved case treatment plan so that [Child] could be safely returned to parental custody, and by the failure or inability of the [Father] to do what is necessary to materially support [Child].

Regarding the third factor, the Cabinet's "reasonable efforts … to reunite [Child] with [Father]" … it is clear that the Cabinet attempted to provide [Father] with substance abuse counseling, supervised visitation sessions, mental health counseling, random drug screens, and various other services. The Cabinet social worker was unaware of any other services [that] the Cabinet could provide or refer [Father] to that would allow for the safe reunification of [Father] with [Child] within a reasonable period of time considering the age of [Child].

The fourth factor concerns "[t]he efforts and adjustments the parent has made in his circumstances, conduct, or conditions to make it in the child's best interest to return him to his home within a reasonable period of time, considering the age of the child[.]" … Regarding this, the Cabinet's caseworker testified that as of the date of this TPR action, [Father] has not been compliant with the Court's remedial orders out of the aforesaid DNA actions, particularly with respect to completion of substance abuse treatment, counseling, and visits with his son. As a result [Child] has been unable to return safely to parental custody and care and instead has remained in the Cabinet's care and custody for not less than twelve (12) consecutive months.

Regarding the fifth factor … it is clear that the [Child's] physical, mental[,] and emotional needs have been met while in the Cabinet's care and custody and the child is expected to make continuing improvements in these areas upon termination of parental rights. [Ms. Wilson] testified that she has visited with [Child] monthly in the foster home and that he is attached to the foster parents, who will adopt the child in the event parental rights are terminated. [Father] has not seen or had any contact with his child since the baby was one month old. [Child] is now thirteen months old. [Child] was released from the hospital to his current foster parents. [Child] was hospitalized for four weeks after his birth due to in vitro drug exposure and suffered with tremors and withdrawal. The foster mother testified that [Child] dealt with symptoms related to the in vitro drug exposure for about five months and continues to see a neonatal specialist for follow-up care. The child considers his foster home his home—as this is [his] only home and the only parents he has ever known.

The final factor this Court is required to consider is the parent's "payment or . . . failure to pay a reasonable portion of substitute physical care and maintenance if financially able to do so." . . . . [Father] has not paid any substitute financial assistance since the [Child] has been in state care, despite having the financial means to do so. [Father] has not provided any form of support to [Child].

Additionally, the trial court found that it had no reason to believe that Child would not continue to be abused or neglected if returned to parental custody.

Father makes two arguments on appeal: (1) that the court erred in finding that Child had been abandoned for a period of not less than 90 days, as Father has been incarcerated for the past 90 days; and (2) that the court erred by failing to give the appropriate weight to Father's fundamental parental rights. We address each argument in turn.

 Father argues that the trial court's finding that the Child had been abandoned was improper because the termination action was filed less than ninety days after the disposition[3] and he had been incarcerated during that time. Citing to *J.H. v. Cabinet for Human Res.*, 704 S.W.2d 661 (Ky. App. 1985), Father contends that the trial court's finding is in error as "incarceration alone [is] not enough to terminate parental rights." Certainly, *if* the court's decision to terminate Father's rights had been based *solely* on the fact that he was incarcerated, it would be in error. *See id.* That, however, is not what happened in the present case. Father testified to the fact that he had not attempted to contact, support, or visit with Child since the Cabinet was awarded temporary custody of Child.[4] This was not solely due to Father's incarceration. Temporary custody was given to the Cabinet on March 12, 2015. Father was not incarcerated until June 1, 2015. Not only was Father free to support and visit with Child during that time, he was court ordered to schedule visitation with Child. Father made no attempt to contact Child or the Cabinet. Neither the Cabinet nor Father's own family was able to contact Father during this period. "Generally, abandonment is demonstrated by facts or circumstances that evince a settled purpose to forego all parental duties and relinquish all parental claims to the child." *O.S. v. C.F*, 655 S.W.2d 32, 34 (Ky. App. 1983). A substantial weight of the evidence demonstrates that Father had forgone his parental duties and relinquished his parental claims to Child well before being incarcerated. The testimony and evidence presented to the trial court showed that Father failed to contact Child; failed to support Child, despite having the means—albeit limited—to do so; and failed to comply with all court orders that would allow him to regain custody of Child. The trial court did not err in finding that Father had abandoned Child.

 Father next argues that the trial court erred in finding that termination of his parental rights was in Child's best interest and failed to give appropriate weight to his fundamental parental rights. Father contends that, in this case, the testimony is undisputed that he wants to have a relationship with Child. Further, Father argues that Child deserves to have the continued love of Father and to be able to form and maintain a bond with his family and natural siblings. He opines that,

---

3. It is unclear to what "disposition" Father is referring.

4. It is unclear from the record if Father had contact with the Child while the Child was hospitalized.

based on his sworn statements evincing his desire to form a bond with Child, the Cabinet failed to show by clear and convincing evidence that termination of his parental rights is in Child's best interest.

 While we do not doubt Father's desire to connect and form a bond with Child, his argument is not persuasive. There is no indication that the trial court failed to give due regard to Father's fundamental rights as a parent. To ensure that a parent receives the appropriate due process protection in a TPR action, "a trial court must consider the six factors enumerated in KRS 625.090(3)(a)-(f) [when conducting the best interest analysis]." *Cabinet for Health & Family Servs. v. K.H.*, 423 S.W.3d 204, 212 (Ky. 2014). As reflected *supra*, pp. 413–14, the trial court did so. The record reveals that there was substantial evidence to support the trial court's conclusions as to each factor. The trial court did not abuse its discretion when it determined that termination of Father's parental rights was in Child's best interest.

## IV. Conclusion

Based on the foregoing, we affirm the Jefferson Circuit Court's order terminating Father's parental rights.

ALL CONCUR.