RENDERED: JULY 12, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1013-ME

W.F.B.                                                           APPELLANT

|  | APPEAL FROM PIKE FAMILY COURT |
|---|---|
| v. | HONORABLE W. KENT VARNEY, JUDGE |
|  | ACTION NO. 22-AD-00052 |

CABINET FOR HEALTH AND
FAMILY SERVICES; B.X.L.,
A MINOR CHILD; B.M.L.; B.N.L.;
AND P.L.                                        APPELLEES

AND

NO. 2023-CA-1014-ME

W.F.B.                                                           APPELLANT

|  | APPEAL FROM PIKE FAMILY COURT |
|---|---|
| v. | HONORABLE W. KENT VARNEY, JUDGE |
|  | ACTION NO. 22-AD-00053 |

CABINET FOR HEALTH AND
FAMILY SERVICES; J.K.L.,
A MINOR CHILD; B.M.L.; B.N.L.;
AND P.L.                                                                            APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  EASTON, ECKERLE, AND LAMBERT, JUDGES.

ECKERLE, JUDGE:  Appellant, W.F.B. ("Mother"), appeals from orders of the

Pike Family Court terminating her parental rights and judgments allowing B.M.L.

and P.L. ("Grandparents") to adopt Appellees, B.X.L. (born January 2017) and

J.K.L. (born May 2018) (collectively, "Children").  Mother raises an unpreserved

constitutional challenge to the involuntary termination and adoption provisions of

KRS[1] 199.502, which we decline to address based on controlling authority.

Mother further argues that the Family Court failed to comply strictly with the

provisions of KRS Chapter 199.  We deem these alleged errors to be harmless.

Finally, we conclude that the Family Court's statutory findings were not clearly

erroneous.  Consequently, the Family Court did not abuse its discretion in

terminating Mother's parental rights or granting the judgments of adoption.

Hence, we affirm in both appeals.

---

[1] Kentucky Revised Statutes.

## I.    Factual and Procedural History

Mother and Appellee, B.N.L. ("Father"), are the parents of Children. Grandparents are the parents of Father and Grandparents of Children. In November of 2019, Appellee, the Cabinet for Health and Family Services ("the Cabinet"), removed Children from Mother and Father.

Both Mother and Father had long histories of substance abuse. Mother had an emergency protective order ("EPO") in place against Father, and the Cabinet recorded a history of neglect at the home where Mother was living. Following the Cabinet's filing of a dependency/neglect/abuse ("DNA") petition, the Family Court placed Children in the temporary custody of Grandparents.

Mother attended inpatient rehabilitation in early 2020. Thereafter, on February 20, 2020, Mother stipulated to a finding of dependency. The Family Court then returned Children to Mother.

However, on August 25, 2020, the Cabinet filed a second DNA petition against Mother, alleging that she was residing at the home of Anthony Baker ("Baker"), who had convictions for drug activity and unlawful transaction with a minor. The Cabinet also asserted that Mother had neglected Children by being transient, failing to take required drug screens, and continued use of controlled substances. In addition, the Cabinet complained that Mother allowed Baker to create a video of her and Children naked in the bathtub. That video was

later posted to social media. The Cabinet also substantiated neglect against Mother by finding that she and Children were present at the scene of an overdose death. Mother left that scene while intoxicated and without proper car restraints for Children. Finally, the Cabinet claimed that Mother took Children to the emergency room and reported that Baker had touched J.K.L. on her vagina and buttocks. The Cabinet filed a third DNA petition against Mother based on the bathtub incident and another incident of alleged child exploitation.

On October 6, 2020, the Cabinet removed Children from Mother and placed them in the temporary custody of Grandparents. Children have remained in their custody since that time. In October 2021, Grandparents filed a separate custody action, in which they were awarded permanent custody of Children. At the same time, the Family Court also entered an order prohibiting Mother from contact with Children. Mother then ceased contact with the Cabinet. She also overdosed three times.

In January of 2022, Mother was indicted for trafficking in narcotics and subsequently convicted of possession of narcotics for the same crime. She received a favorable, diverted sentence, in part for her willingness to testify against a co-defendant. After benefiting from the diversion, Mother voluntarily checked herself into two successive, inpatient treatment programs, followed by an outpatient treatment program. Mother later resided at a sober living facility in

Lexington. While Mother has bought some clothes and presents, she has not provided any significant support for Children for quite some time.

On June 20, 2022, the Grandparents filed petitions for involuntary adoption of Children pursuant to KRS 199.502. Father consented to the termination of his parental rights and the adoption of Children. The matter proceeded to an evidentiary hearing, which was held on July 5 and July 25, 2023. The Family Court took judicial notice of the proceedings in the related DNA petitions, as well as the custody action. However, the records of those actions were not introduced. The last Cabinet worker for the family, Krystal Dean, testified regarding these cases, as well as the Cabinet's efforts toward reunification. Children's guardian *ad litem* ("GAL") testified on her history with Children and her recommendations regarding the adoption petition. However, GAL did not file her report with the Family Court until after the hearing. Mother, Father, and Grandparents also testified at the hearing.

Thereafter, on August 4, 2023, the Family Court entered separate Findings of Fact, Conclusions of Law, and Orders terminating Mother's parental rights to Children. In pertinent part, the Family Court found that Mother: abandoned Children for more than 90 days; continuously or repeatedly inflicted or allowed to be inflicted upon Children, by other than accidental means, physical injury or emotional harm; caused or allowed Children to be sexually abused or

exploited by Baker; continuously or repeatedly failed or refused to provide or has been substantially incapable of providing essential parental care and protection for Children for a period of not less than six months, and there is no reasonable expectation of improvement considering the age of the children; and continuously or repeatedly failed to provide or is incapable of providing essential food, clothing, shelter, medical care, or education reasonably necessary for Children's well-being for reasons other than poverty alone, and there is no reasonable expectation of improvement in the immediately foreseeable future considering Children's age.

Based upon these findings, the Family Court concluded that it would be in the best interests of Children to terminate Mother's parental rights. On the same day, the Family Court entered separate Judgments allowing Grandparents to adopt Children. On September 21, 2023, the Family Court entered Amended Findings of Fact and Conclusions of Law to correct certain typographical errors. Mother appeals from these judgments regarding both Children. Additional facts will be set forth below as necessary.

## II.  Constitutional Issue

Mother first argues that KRS 199.502 unconstitutionally deprives her of substantive due process by permitting private individuals to seek termination of parental rights by adoption and by allowing termination of her parental rights without a separate termination proceeding under KRS 625.090. Parties are

required to notify the Attorney General of a challenge to the constitutionality of a statute while the matter is pending in Circuit Court. KRS 418.075. Our Supreme Court has held that strict compliance with the notification provisions of KRS 418.075 is mandatory, and Appellate Courts will generally refuse to address arguments that a statute is unconstitutional unless the notice provisions of KRS 418.075 has been fully satisfied. *Benet v. Commonwealth*, 253 S.W.3d 528, 532 (Ky. 2008). *See also Craft v. Commonwealth*, 483 S.W.3d 837, 840 (Ky. 2016). In this case, Mother did not raise the constitutionality of KRS 199.502 to the Family Court, and she notified the Attorney General of her attempted challenge for the first time while this matter was on appeal to this Court. As a result, the issue is not preserved for our review.

Nevertheless, Mother argues that this Court should address the constitutionality of KRS 199.502 based on the implications to her fundamental rights as a parent. Mother relies heavily on Justice Lambert's dissent in *M.S.S. v. J.E.B.*, 638 S.W.3d 354 (Ky. 2022) (Lambert, J., dissenting), in which she took the position that KRS 199.502 impermissibly denies natural parents due process under the Kentucky Constitution. *Id.* at 373-74. The dissent also posited, even though the issue was not raised below, that "the substantive due process guaranteed by the Kentucky Constitution requires a separate hearing on the termination of parental rights before a court can enter an order effectuating a non-consensual adoption."

*Id.* at 377. Consequently, the dissent wanted a ruling that a proceeding to terminate parental rights must take place and conclude before the adoption, and only the Commonwealth, through the Cabinet, a County or Commonwealth Attorney, or a parent, has standing to file such a petition to terminate a natural parent's rights. *Id.* The dissent further opined that KRS 199.502 fails to provide the full panoply of due process rights afforded to parents under KRS Chapter 625. *Id.* at 372-74.

However, the majority in *M.S.S.* expressly rejected the dissent's reasoning. First, the majority noted that the constitutional challenge was not properly before the Court. *Id.* at 363. The majority also rejected the dissent's conclusion that KRS 199.502 deprives a natural parent of substantive due process rights:

> However, the dissent fails to identify why the protections afforded to parents whose rights are sought to be terminated by way of an adoption without consent are constitutionally deficient, even assuming those protections are "significantly lower" than those afforded to parents subject to involuntary termination under KRS 625.050. Similarly, the dissent does not identify why the fact that a private party may petition the court for an adoption without consent, which if granted, simultaneously terminates the rights of the biological living parents, renders that process constitutionally deficient.

638 S.W.3d at 364.

This Court is bound to follow applicable precedents established in the opinions of the Supreme Court and its predecessor court. SCR[2] 1.030(8)(a). *See also Smith v. Vilvarajah*, 57 S.W.3d 839, 841 (Ky. App. 2000). The dissent in *M.S.S.* is not controlling precedent. At a minimum, the Supreme Court's majority opinion in *M.S.S.* expressly held that KRS 199.502 does not facially violate the substantive due process rights of natural parents.[3] In light of this binding holding, and since the issue has not been otherwise preserved, we decline to address this subject further.

## III.    Access to Sealed Portions of the Record

Mother next complains that her due process rights were violated when she was denied access to the full and complete Trial Court record. She focuses on the sealed portion of the records containing the Family Court Judge's notes from the evidentiary hearing. Prior to briefing on this case, Mother's counsel filed a motion, pursuant to RAP[4] 28(B), to unseal and view the sealed documents in the Trial Court's file. This Court's motion panel denied the motion, but directed Mother's counsel to file the motion with the Family Court. Thereafter, the Family Court granted the motion with respect to the sealed exhibits, but denied the motion

---

[2] Kentucky Rules of the Supreme Court.

[3] We must also note that the Cabinet was named as a party to the adoption petitions, and it remained as a party throughout the proceedings and on appeal.

[4] Kentucky Rules of Appellate Procedure.

with respect to the Trial Judge's notes. Mother maintains that the continued sealing of this portion of the record restricts her ability to brief the case adequately on appeal.

We question whether such personal notes should have been included in the record, under seal or otherwise. We recognize that some Trial Courts have included such notes in the record in the past. And in certain cases, the Trial Judge's notes may be necessary to preserve the record fully. But here, the notes have little significance to this Court's review. It is well-established that any Court speaks only through its "written orders entered upon the official record." *Oakley v. Oakley*, 391 S.W.3d 377, 378 (Ky. App. 2012) (citing *Kindred Nursing Centers Ltd. Partnership v. Sloan*, 329 S.W.3d 347, 349 (Ky. App. 2010)).

We would also point out that this Court is entitled to review sealed portions of the record. The documents remaining under seal are simply the Family Court Judge's personal notes taken to aid in the preparation of the Findings of Fact and Conclusions of Law. In its order denying the motion to unseal the records, the Family Court stated that the notes "were fully incorporated into the Findings of Fact and Conclusions of Law." Given the limited relevance, if any, of these notes, Mother was not prejudiced by the denial of her motion to unseal the records.

## IV. Strict Compliance with Adoption Statute and Procedures

Thus having dispensed with the arguments of constitutionality and record sealing, we now turn to the substantive merits of this appeal. This matter proceeded as a non-consensual adoption under KRS Chapter 199. "An adoption without the consent of a living biological parent is, in effect, a proceeding to terminate that parent's parental rights." *M.S.S.*, 638 S.W.3d at 359 (citation omitted). As such, we apply the same standard of review as in termination of parental rights cases. "A family court's termination of parental rights will be reversed only if it was clearly erroneous and not based upon clear and convincing evidence." *Id.* at 359-60 (citation omitted). "Clear and convincing proof does not necessarily mean uncontradicted proof. It is sufficient if there is proof of a probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent minded people." *Id.* at 360 (citation omitted). Additionally, "[s]ince adoption is a statutory right which severs forever the parental relationship, Kentucky courts have required strict compliance with the procedures provided in order to protect the rights of the natural parents." *Id.* (citing *Day v. Day*, 937 S.W.2d 717, 719 (Ky. 1997)).

Under KRS 199.502(1), "an adoption may be granted without the consent of the biological living parents of a child if it is pleaded and proved as part of the adoption proceeding that any of the following [nine] conditions exist with

respect to the child[.]"  In this case, the Family Court made findings under five of those conditions:

> (a) That the parent has abandoned the child for a period of not less than ninety (90) days;
>
> . . .
>
> (c) That the parent has continuously or repeatedly inflicted or allowed to be inflicted upon the child, by other than accidental means, physical injury or emotional harm;
>
> . . .
>
> (e) That the parent, for a period of not less than six (6) months, has continuously or repeatedly failed or refused to provide or has been substantially incapable of providing essential parental care and protection for the child, and that there is no reasonable expectation of improvement in parental care and protection, considering the age of the child;
>
> (f) That the parent has caused or allowed the child to be sexually abused or exploited; [and]
>
> (g) That the parent, for reasons other than poverty alone, has continuously or repeatedly failed to provide or is incapable of providing essential food, clothing, shelter, medical care, or education reasonably necessary and available for the child's well-being and that there is no reasonable expectation of significant improvement in the parent's conduct in the immediately foreseeable future, considering the age of the child[.]

Mother first argues that Grandparents failed to plead specifically the elements of KRS 199.502(c) or (f). Consequently, she contends that the Family Court could not base its findings on those elements.

However, KRS 199.502(1) merely requires pleading and proof of any one of the specified conditions. Therefore, Grandparent's failure to plead the other conditions does not render insufficient the Family Court's findings under the pleaded conditions.[5]

We are more concerned with the Family Court's failure to comply strictly with other requirements of KRS Chapter 199. Specifically, and as noted above, GAL did not file her report until after the evidentiary hearing. KRS 199.515 provides, in pertinent part, that:

> After the report of the guardian ad litem, if any, for the child and the report [of the Cabinet] required by KRS 199.510 have been filed, the court at any time on motion of its own or that of any interested party may set a time for a hearing on the petition to be conducted in chambers in privacy, except as hereinafter provided.

Mother argues that, under this section, the Family Court may only schedule a hearing on the adoption petition after the filing of GAL's report. Since the Family Court held the hearing before the filing of the report, Mother maintains

---

[5] Nonetheless, it is worth noting that some practitioners plead the grounds with specific reference to the subsections of the statute and even parrot the wording in the subsections. This practice removes any question of sufficient pleading. But Kentucky has a policy of notice pleading, and the statutory grounds may be adequately paraphrased. Even so, in this case, there was insufficient notice pled for subsections (c) and (f) of KRS 199.502(1) on some of the conditions.

-13-

that the Family Court failed to comply strictly with all of the statutory requirements for adoption, rendering the termination and adoption judgments invalid. Grandparents and GAL argue that the late filing of the report was, at most, harmless error.

As noted above, adoption is a creature of statute, generally requiring strict compliance with the statutory requirements. *Day*, *supra*. But those statutory requirements are not always subject to such a high standard. In *E.L.T. v. Cabinet for Health & Family Services*, 647 S.W.3d 561 (Ky. App. 2022), a termination case, this Court held that substantial compliance may be sufficient where the purpose of the statute is accomplished and no harm results. *Id.* at 566 (citing *Webster County v. Vaughn*, 365 S.W.2d 109, 111 (Ky. 1962)). "In other words, 'if the directions given by the statute to accomplish a given end are violated, but the given end is in fact accomplished, without affecting the real merits of the case, then the statute is to be regarded as directory merely.'" *Id.* (quoting *Knox County v. Hammons*, 129 S.W.3d 839, 843 (Ky. 2004)).

In *E.L.T.*, the issue concerned compliance with KRS 625.090(6), which requires a circuit court to enter findings of fact, conclusions of law, and a decision regarding a termination petition within 30 days of the hearing and argument of counsel. Despite the apparently mandatory language of this section, this Court concluded that a trial court's untimely filing of termination findings and

an order was subject to analysis under the harmless-error standard under CR[6] 61.01. *Id.* Because the parties suffered no prejudice due to the delay in entering the orders, and the parent's substantial rights were not violated, this Court found no reversible error. *Id.* at 566-67.

Termination of parental rights under KRS Chapter 199 is no less significant than termination of parental rights under KRS Chapter 625. Similarly, the timing requirement of KRS 199.515, like the requirement in KRS 625.090(6), is fundamentally procedural in nature and does not address the substantive elements for termination of parental rights. Under the specific facts of this case, we conclude that this matter is subject to harmless-error analysis.

We recognize that the purpose of KRS 199.515 is to ensure that a parent has an adequate opportunity to review a GAL's recommendations prior to an evidentiary hearing. However, here, Mother concedes that this issue was not preserved for review by an objection prior to or at the hearing. The Family Court accomplished the purpose of KRS 199.515 by ensuring that GAL's recommendations were made on the record and that her report was introduced. GAL testified at length regarding her conclusions as contained in the report. Mother had a full opportunity to cross-examine GAL at the hearing. Moreover, Mother does not allege that she was unfairly prejudiced by the filing of GAL's

---

[6] Kentucky Rules of Civil Procedure.

report after the hearing. Had she raised this issue timely and properly before the Family Court, it could have easily corrected any issues. While we do not condone the failure to comply strictly with all of the statutory requirements, we can find no reversible error in this case.

For similar reasons, we find no reversible error on Mother's other claims of procedural error. Those alleged errors do not arise from non-compliance with the statutory requirements under KRS Chapter 199. Rather, Mother points to several alleged violations of the Family Court Rules of Practice and Procedure (FCRPP). In particular, she argues that Grandparents failed to file a witness and exhibit list as required by FCRPP 7(1), and that Grandparents failed to admit a certified copy of the DNA and custody court records as required by FCRPP 32(3).

However, FCRPP 1(5) expressly provides that the Civil Rules and the Rules of Evidence "shall apply to family law cases to the extent that they are not inconsistent with these rules." Thus, the harmless-error standard of CR 61.01 remains applicable to these matters. Again, Mother did not preserve her objections to these alleged errors. None of the parties filed a witness list. Moreover, Mother does not claim that she was unfairly prejudiced by the failure to require the parties to do so.

Similarly, Mother did not object to the failure to admit the related DNA and custody records. Yet, KRE[7] 201 permitted the Family Court to take judicial notice of other court records, provided that the facts established by the records are not subject to reasonable dispute. *Lage v. Esterle*, 591 S.W.3d 416, 421 (Ky. App. 2019) (citing *Rogers v. Commonwealth*, 366 S.W.3d 446, 451 (Ky. 2012)). We recognize that the best evidence rule, set out in KRE 1002, usually requires parties to introduce the most authentic evidence that is within their power to present. *See Savage v. Three Rivers Med. Ctr.*, 390 S.W.3d 104, 114 (Ky. 2012). Furthermore, both FCRPP 32(3) and KRE 1005 usually require introduction of certified copies of court records. But in the absence of any showing of prejudice, any error must be deemed harmless.

## V. Sufficiency of the Evidence

Finally, Mother argues that the Family Court's findings on the statutory factors supporting termination of her parental rights are not supported by substantial evidence. In *M.S.S.*, *supra*, our Supreme Court set forth the applicable standard of review as follows:

> [T]rial courts are afforded a great deal of discretion in determining whether termination of parental rights is appropriate. A family court's termination of parental rights will be reversed only if it was clearly erroneous and not based upon clear and convincing evidence. Clear

---

[7] Kentucky Rules of Evidence.

-17-

and convincing proof does not necessarily mean uncontradicted proof. It is sufficient if there is proof of a probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent minded people. Under this standard, we are obligated to give a great deal of deference to the family court's findings and should not interfere with those findings unless the record is devoid of substantial evidence to support them.

*Id.* at 359-60 (internal quotation marks and citations omitted).

"The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000). More specifically, a court abuses the discretion afforded it when "(1) its decision rests on an error of law . . . or a clearly erroneous factual finding, or (2) its decision . . . cannot be located within the range of permissible decisions." *Miller v. Eldridge*, 146 S.W.3d 909, 915 n.11 (Ky. 2004) (emphasis omitted). The clearly erroneous standard applies to the Family Court's factual findings. *Miller*, 146 S.W.3d at 916. A finding of fact is clearly erroneous if it is not supported by substantial evidence. *Hunter v. Hunter*, 127 S.W.3d 656, 659 (Ky. App. 2003). "Substantial evidence is evidence, when taken alone or in light of all the evidence, which has sufficient probative value to induce conviction in the mind of a reasonable person." *Id.* (citing *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998)).

As discussed above, Mother argues that Grandparents failed to plead the statutory grounds for termination under KRS 199.502(1)(c) or (f). Thus, she focuses on the Family Court's findings under KRS 199.502(1)(a), (e), and (g). Mother first challenges the Family Court's finding that she abandoned the children for more than 90 days. The Family Court found that Mother had no contact with the children since October 2021. The Family Court also found that Mother made no significant effort to seek contact during this time.

Mother concedes that she has not seen the children since October 2021. She argues that the Family Court failed to consider that the no-contact order prevented her from having direct contact. She further contends that the Family Court misconstrued her prior request to release pandemic stimulus funds held by the clerk's office. Mother asserts that she sought these funds to hire and pay an attorney to file a motion for visitation and custody. Mother argues that these efforts are inconsistent with the Family Court's finding that her actions demonstrated a "settled purpose to forego all parental duties and relinquish all parental claims to the child." *S.B.B. v. J.W.B.*, 304 S.W.3d 712, 716 (Ky. App. 2010) (citing *O.S. v. C.F.*, 655 S.W.2d 32, 34 (Ky. App. 1983)).

The Family Court recognized the effect of the no-contact order but noted that Mother had opportunities to file motions in the underlying actions to try to lift the restrictions on her contact with Children. Apart from a single effort to

release the stimulus funds, Mother never followed through to renew contact with Children. We agree with the Family Court that this conduct was relevant to support a finding of abandonment.

Mother also contends that the Family Court found abandonment even though she was incarcerated for six months preceding the filing of the adoption petition. In *J.H. v. Cabinet for Human Resources*, 704 S.W. 2d 661, 663 (Ky. App. 1985), this Court recognized that "[i]ncarceration alone can never be construed as abandonment as a matter of law." However, this Court further noted that "absence, voluntary or court-imposed, may be a factor to consider in determining whether the children have been neglected[.]" *Id.* at 664. Indeed, this Court ultimately concluded in that case that the parent's "violence" and "criminal lifestyle" resulted in his children being "substantially and continuously neglected." *Id.* Similarly, in *Cabinet for Human Resources v. Rogeski*, 909 S.W.2d 660 (Ky. 1995), the Supreme Court held that "[a]lthough incarceration for an isolated criminal offense may not constitute abandonment justifying termination of parental rights, incarceration is a factor to be considered[.]" *Id.* at 661.

And recently, in *A.R.D. v. Cabinet for Health and Family Services*, 606 S.W.3d 105, 110-11 (Ky. App. 2020), this Court once again recognized that "a parent's incarceration does not, by itself, always establish that parental rights should be terminated." However, the Court also noted that absence and the choice

-20-

of a "criminal lifestyle" remain factors for consideration by the trial courts. *Id.* at 111. Considering the extended period of time during which Mother was absent from Children's lives, the Family Court did not clearly err in finding abandonment.

Mother also takes issue with the Family Court's findings under KRS 199.502(1)(e) and (g). Mother does not contest the Family Court's findings that she failed to provide essential parental care and protection for Children, or that she failed to provide essential food, clothing, shelter, medical care, or education reasonably necessary and available for Children's well-being. As previously discussed, Mother provided no support or care for Children since October 2021 apart from a few clothes and gifts. Rather, Mother focuses on the sufficiency of the Family Court's findings that there is no reasonable expectation of improvement in her circumstances in the immediately foreseeable future considering the age of Children.

Mother points to her recent completion of residential treatment and therapy for her substance-abuse issues. Mother is living in a sober-living facility. She attends group therapy several times a week and is enrolled in college to become a trauma therapist. Based on her significant and documented improvement, Mother argues that the Family Court clearly erred in finding that there was no reasonable expectation of improvement in the immediately foreseeable future.

In *M.E.C. v. Commonwealth, Cabinet for Health & Family Services*, 254 S.W.3d 846 (Ky. App. 2008), this Court reversed a termination order where the trial court had based its assessment solely on the parent's past conduct without any significant evaluation of future parenting capacity. *Id.* at 854-55. This Court noted that the statute does not require that the parent completely and immediately eradicate all problems. *Id.* at 855. *See also F.V. v. Commonwealth Cabinet for Health & Fam. Servs.*, 567 S.W.3d 597, 608-09 (Ky. App. 2018). But in *M.E.C.*, there was no evidence that the parent ever emotionally or physically abused her children.

Here, however, there were substantiated claims of emotional abuse and possible sexual exploitation. Even if Children's naked photos do not amount to exploitation, Mother demonstrated a profound lack of judgment in a serious matter by allowing them to be taken and posted to social media. There is also Mother's deeply concerning conduct surrounding the overdose death, as well as Mother's dangerous actions involving Children following that death. And she still fails to address the seriousness of her actions in allowing Children to be exposed to domestic violence and criminal activity. Furthermore, Mother had a long history of neglecting Children and criminal conduct well after Children's most-recent removal, resulting in the felony charges against her. Mother did not begin to make any progress until after her incarceration.

Moreover, the Family Court addressed Mother's recent progress as it related to her future parenting capacity, stating:

> The Court does appreciate her sobriety, but currently and for the immediately foreseeable future the Court does not see the expectations of her improvement. [Mother] presented no plan of what to do if the children were returned to her. She has no place to live with the children and does not know what school system the children would be attending. Given her brief period of sobriety combined with the lack of a plan for independent living, it is not immediately foreseeable to this Court that [Mother's] situation has improved enough to see when she would be able to be the parent these children deserve considering their age.

The Family Court's findings on this matter are consistent with and supported by the evidence presented. Although Mother's recent efforts are commendable, they neither demonstrate that the Family Court failed to base its decision on sufficient evidence nor that it clearly erred in its finding that there is no reasonable expectation of improvement in her circumstances that would warrant reunification in the foreseeable future. While all hope that Mother has finally made the determination to stay on the right path for herself and everyone else, hope alone is not evidence. We also note the uncontested evidence that Children are well adjusted in Grandparents' care. Because the Family Court's findings on the pleaded grounds were supported by substantial evidence, we need not address the sufficiency of the evidence on the other grounds found by the Family Court.

-23-

## VI. Conclusion

Accordingly, we affirm the findings of fact, conclusions of law, orders, and judgments of the Pike Family Court terminating Mother's parental rights and allowing Grandparents to adopt Children.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Kelly Kirby Ridings
London, Kentucky

BRIEF FOR APPELLEES
B.M.L. AND P.L.:

Tammy C. Skeens
Pikeville, Kentucky

BRIEF FOR GUARDIAN *AD LITEM*:

Amber Hunt Sisco
Pikeville, Kentucky