[Cite as *Otte v. State*, 2017-Ohio-7568.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 106204**

---

# GARY OTTE

PLAINTIFF-APPELLANT

vs.

# STATE OF OHIO

DEFENDANT-APPELLEE

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-17-884798

**BEFORE:** E.T. Gallagher, J., Keough, A.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** September 12, 2017

**ATTORNEYS FOR APPELLANTS**

Stephen C. Newman
Federal Public Defender

BY:    Alan C. Rossman
       Sharon A. Hicks
       Joseph E. Wilhelm
Assistant Federal Public Defenders
1660 West Second Street, Suite 750
1200 Ontario Street
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEES**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY:    Christopher Schroeder
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, J.:

{¶1} Plaintiff-appellant, Gary Otte, appeals the dismissal of his complaint for declaratory judgment and claims the following error:

> The trial court erred when it ruled that appellant's Eighth Amendment claim is not justiciable as a complaint for declaratory relief.

{¶2} We find no merit to the appeal and affirm the trial court's judgment.

## I. Facts and Procedural History

{¶3} In March 1992, Otte was charged with four counts of aggravated murder, in violation of both R.C. 2903.01(A) and 2903.01(B), for the murders of Robert Wasikowski and Sharon Kostura. The aggravated murder charges contained two death penalty specifications that (1) Otte committed the murder while committing aggravated robbery and aggravated burglary, as described in R.C. 2929.04(A)(7), and (2) the aggravated murder of Sharon Kostura was part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons, as described in R.C. 2929.04(A)(5). In addition to the murder charges, the indictment charged Otte with two counts each of aggravated burglary, kidnapping, and aggravated robbery.

{¶4} A three-judge panel found Otte guilty of four counts of aggravated murder with both death specifications. The panel also found Otte guilty of two counts of aggravated robbery and two counts of aggravated burglary, but acquitted him of the kidnapping charges. At the conclusion of the penalty phase of trial, the panel found that the aggravating circumstances of the crimes outweighed any mitigating factors and sentenced Otte to death. His convictions and death sentence were affirmed on direct

appeal to this court and the Ohio Supreme Court. *State v. Otte*, 8th Dist. Cuyahoga No. 64617, 1994 Ohio App. LEXIS 4869 (Oct. 27, 1994), *aff'd*, 74 Ohio St.3d 555, 660 N.E.2d 711 (1996).

{¶5} Otte subsequently pursued unsuccessful petitions for postconviction and habeas corpus relief in state and federal courts. Once the appeals of these claims were exhausted, the Ohio Supreme Court scheduled Otte's execution for March 15, 2017. Governor John Kasich issued two reprieves that postponed Otte's execution date to September 13, 2017.

{¶6} On August 21, 2017, Otte filed a complaint in the Cuyahoga County Court of Common Pleas seeking a declaration that R.C. 2929.03, Ohio's death penalty statute, violates the Eighth Amendment's guarantee against cruel and unusual punishment. Otte alleged that "[b]ased on the Eighth and Fourteenth Amendments' evolving standards of decency, the death penalty is now a disproportionate punishment for any offender who committed his capital crime before turning age twenty-one."

{¶7} The state filed a motion to dismiss the complaint under Civ.R. 12(B)(6), arguing that the complaint failed to state a claim on which relief could be granted. While the case was pending, Otte filed a motion to stay the execution date in the Ohio Supreme Court, which was denied. The trial court subsequently granted the state's motion to dismiss Otte's complaint. In its journal entry, the trial court held that "a declaratory judgment action cannot be used to collaterally attack a conviction or sentence in a criminal case." Otte now appeals the dismissal of his declaratory judgment action.

## II. Law and Analysis

{¶8} In his sole assignment of error, Otte argues the trial court erred in concluding that his Eighth Amendment proportionality claim is not justiciable as a declaratory judgment action. He contends his claim is a justiciable controversy appropriate for declaratory judgment because it is not cognizable as a postconviction claim.

{¶9} We review an order dismissing a complaint for failure to state a claim for relief de novo. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44. When reviewing a Civ.R. 12(B)(6) motion to dismiss, we must accept the material allegations of the complaint as true and make all reasonable inferences in favor of the plaintiff. *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 6. To prevail on the motion, it must appear from the face of the complaint that the plaintiff can prove no set of facts that would justify a court granting relief. *O'Brien v. Univ. Comm. Tenants Union, Inc.*, 42 Ohio St.2d 242, 245, 327 N.E.2d 753 (1975).

{¶10} To state a claim for declaratory judgment under R.C. 2721.01, et seq., the plaintiff must establish that (1) a real controversy exists between the parties, (2) the controversy is justiciable, and (3) speedy relief is necessary to preserve the parties' rights. *M6 Motors, Inc. v. Nissan of N. Olmsted, L.L.C.*, 8th Dist. Cuyahoga No. 100684, 2014-Ohio-2537, ¶ 19, citing *Burger Brewing Co. v. Ohio Liquor Control Comm.*, 34 Ohio St.2d 93, 97, 296 N.E.2d 261 (1973).

{¶11} The trial court held that declaratory judgment actions may not be used to collaterally attack a conviction or sentence. A collateral attack is "'an attack on a judgment in a proceeding other than a direct appeal[.]'" *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 115 Ohio St.3d 375, 2007-Ohio-5024, 875 N.E.2d 550, ¶ 17, quoting *Black's Law Dictionary* 278 (8th Ed.2004). Collateral attacks "'attempt to defeat the operation of a judgment, in a proceeding where some new right derived from or through the judgment is involved.'" *Fawn Lake Apts. v. Cuyahoga Cty. Bd. of Revision*, 85 Ohio St.3d 609, 611, 710 N.E.2d 681 (1999), quoting *Kingsborough v. Tousley*, 56 Ohio St. 450, 458, 47 N.E. 541 (1897).

{¶12} The trial court found that Otte's claim is not a justiciable controversy that may be rectified by a declaratory judgment because R.C. 2953.21 et seq., the postconviction statute, provides the exclusive method for challenging a defendant's conviction or sentence. Indeed, R.C. 2953.21(K) states that with the exception of direct appeals, the relief set forth therein "is the exclusive remedy by which a person may bring a collateral challenge to the validity of a conviction or sentence in a criminal case * * * ."

{¶13} The Ohio Supreme Court has held that although the Declaratory Judgments Act is intended to declare rights in the face of uncertainty, a declaratory judgment is not a proper vehicle for challenging a criminal sentence. *State v. Lingo*, 138 Ohio St.3d 427, 2014-Ohio-1052, 7 N.E.3d 1188, ¶ 44. Ohio's criminal rules and statutes provide for the direct review of criminal judgments through appeal, and collateral attacks through postconviction petitions, habeas corpus, and motions to vacate, but not declaratory

judgments. *Id.* Declaratory judgments are simply not part of the criminal appellate or postconviction review process and may not be used as a substitute for any of these criminal remedies. *Id.*

**{¶14}** Otte nevertheless maintains that his claim is not governed by the postconviction statute because he is not claiming error on direct or collateral review. He contends his claim, that the death penalty is unconstitutional as applied to offenders who were under 21 years of age at the time they committed their capital offenses, is only now ripe for review as the result of (1) recent scientific discoveries concerning human cognitive development, (2) intervening legal developments, and (2) society's evolving standards of decency for defining cruel and unusual punishments. (Appellant's br. 6, 9.) Otte cites *Kentucky v. Bredhold*, Ky. Fayette Cir. 7th Div. No. 14-CR-161 (Aug. 1, 2017), to support his argument.

**{¶15}** In *Bredhold*, a common pleas court declared Kentucky's death penalty statute unconstitutional insofar as it allows capital punishment for those who were under 21 years of age at the time they committed their offenses. The *Bredhold* court extended the United States Supreme Court's holding in *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), that the Eighth Amendment prohibits the imposition of the death penalty on juvenile offenders under 18, to individuals who were between the ages of 18 and 21 when they committed capital offenses in that jurisdiction.

**{¶16}** In *Roper*, the court explained that "the prohibition against 'cruel and unusual punishments,' like other expansive language in the Constitution, must be

interpreted according to its text, by considering history, tradition, and precedent, and with due regard for its purpose and function in the constitutional design." *Id*. at 560-561. In order to properly interpret the Eighth Amendment, courts must consider "'the evolving standards of decency that mark the progress of a maturing society' to determine which punishments are so disproportionate as to be cruel and unusual." *Id*., quoting *Trop v. Dulles*, 356 U.S. 86, 100-101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958) (plurality opinion).

{¶17} The *Roper* court reviewed objective indicia of society's standards on juvenile capital punishment, as expressed in pertinent legislative enactments and state practice, and found that 30 states either expressly or implicitly prohibited the imposition of the death penalty on juveniles. *Id*. at 564. Based on these statistics, the *Roper* court concluded that American society viewed juveniles as categorically less culpable than the average criminal for three reasons (1) the lack of maturity and an underdeveloped sense of responsibility were found in youth more often than in adults and were more understandable among the young (2) juveniles were more vulnerable or susceptible to negative influences and outside pressures, including peer pressure, and (3) the character of a juvenile was not as well formed as that of an adult. *Id*. at 569-570.

{¶18} In *Bredhold*, the Kentucky court noted that since *Roper* was decided in 2005, six states have abolished the death penalty, and 30 states no longer execute offenders who were under 21 years old when they committed their capital offenses. *Bredhold* at 4.[1] Based on these statistics, the *Bredhold* court concluded that there is a

---

[1] According to the court in *Bredhold*, the following six states abolished the death penalty

"clear national consensus trending toward restricting the death penalty, especially in cases where defendants were between the ages of 18 and 21 at the time of the offenses." *Bredhold* at 5.[2]

{¶19} Based on *Bredhold* and the scientific research cited therein, Otte contends he had no right to assert a claim for cruel and unusual punishment within the statutory limitations period for filing petitions for postconviction relief under R.C. 2953.21 et seq. because no such claim existed until *Bredhold* was decided. He also argues he is precluded from filing a successive petition for postconviction. R.C. 2953.23(A)(1) allows convicted defendants to file a successive postconviction petition at any time where both of the following apply:

> (a)   Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

> (b)  The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable fact finder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at

---

since *Roper* was decided: Connecticut (2012), Illinois (2011), Maryland (2013), New Jersey (2007), New Mexico (2009), and New York (2007).

[2]   The *Bredhold* court also cited recent research in psychology and neuroscience indicating that individuals in their late teens and early twenties are less mature than older adults in several ways, including impulse control, risk-taking, and emotional development.

the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

R.C. 2953.23(A)(1). The problem for Otte is that his newly claimed Eighth Amendment right, as defined by *Bredhold*, has not been recognized by the United States Supreme Court as required by R.C. 2953.23(A)(1)(a). *Bredhold* is a state court decision from Kentucky and is not binding on Ohio courts.

{¶20} Indeed, the United States Sixth Circuit recently observed that "no authority exists at the present time," to support the argument that the defendant in that case, Ronald Phillips, was ineligible for the Ohio death penalty because he was 19 years old at the time he committed the capital offense. *In re Ronald Phillips*, 6th Cir. No. 17-3729 (July 20, 2017), * 5.

{¶21} The issue in *Phillips* was whether Phillips could maintain a successive petition for habeas corpus to challenge his death sentence. The criteria for maintaining successive petitions for habeas corpus are similar to the criteria needed to prevail on a successive petition for postconviction relief under R.C. 2953.23(A)(1). *See* 28 U.S.C. 2244.[3] Thus, the court in *Phillips* recognized that there was no constitutional prohibition against the death penalty for offenders who were under 21 years old when they committed their capital offenses.

---

[3] To maintain a successive petition for habeas corpus under 28 U.S.C. 2244, the petitioner must establish either that (1) a new rule of constitutional law applies to his case that the Supreme Court made retroactive to cases on collateral review, or (2) a newly discovered factual predicate exists that, if proven, sufficiently establishes that no reasonable factfinder wold have found the petitioner guilty of the underlying offense but for constitutional error.

{¶22} The court in *Phillips* also found it significant that although Phillips relied on case law that developed since the time of his capital conviction, "the purported defect, his age at the time of the offense, remains unchanged from that time."  The same holds true for Otte.  Yet, Otte argues that recent developments in science and caselaw, including *Roper* and *Bredhold*, are akin to newly discovered facts.  However, nothing prevented Otte from making that argument with scientific evidence in a successive petition for habeas corpus at some earlier point in time.

{¶23} Otte nevertheless asserts that "[b]ecause the United States Supreme Court has not yet extended *Roper* to bar the execution of offenders under the age of 21, the successive post-conviction statute is an inadequate vehicle for Mr. Otte to present his Eighth Amendment claim."  (Appellant's br. 9, fn. 1.)  Therefore, Otte argues, that dismissing his declaratory judgment action would deny him access to the courts. (Appellant's br. 8.)

{¶24} However, Otte has not been denied access to the courts.  He filed petitions for habeas and postconviction relief, and numerous appeals.  He has exhausted every available remedy.  And he was a party to a recent action brought under 42 U.S.C. 1983 to challenge Ohio's lethal injection protocol.  *See In re Ohio Execution Protocol Litigation*, S.D.Ohio No. 2:11-cv-1016, 2017 U.S. Dist. LEXIS 145432 (Sept. 8, 2017).

{¶25} Otte's complaint for declaratory judgment is an attempt to circumvent the requirements of R.C. 2953.23(A) for postconviction relief because he cannot meet those requirements.  To allow Otte to pursue a declaratory judgment would set a dangerous

precedent whereby common pleas courts would be asked to review the convictions and sentences of other common pleas courts. The courts would be inundated with declaratory judgment actions. The postconviction relief statute was enacted to provide "'the best method of protecting constitutional rights of individuals, and, at the same time, provide a more orderly method of hearing such matters.'" *Kott v. Maxwell*, 3 Ohio App.2d 337, 210 N.E.2d 746 (1965), paragraph one of the syllabus, quoting R.C. 2953.21.

{¶26} Therefore, because Otte has no right to file a declaratory judgment action to challenge his death sentence, the trial court properly dismissed Otte's complaint. The trial court's judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, A.J., CONCURS;
TIM McCORMACK, J., CONCURS WITH SEPARATE ATTACHED OPINION

TIM McCORMACK, J., CONCURRING:

{¶27} The facts that form the basis of the original charges made in this case reflect grotesque, barbaric, unimaginably horrific acts of depravity of human against victimized human. Stretching the medical, ethical, and legal mind to formulate the development of an effective and fitting remedy to such distorted violence tests our disciplines. Surely it is fully understandable that formulating a remedy short of an equal measure of violence against the perpetrator falls far short of satisfactory retribution.

{¶28} The convicted murderer in this case is not as a matter of right entitled to our compassion as it relates to his sentence. The specific issue raised by the appellant in this appeal is whether, based on 2017 knowledge and values, persons who were less than 21 years of age at the time of their criminal violations should be dealt with differently than fully mature men and women who commit the worst of crimes.

{¶29} I understand and concur with the majority's solid legal analysis. Procedurally, Otte cannot successfully utilize a declaratory judgment action to collaterally attack his criminal sentence. However, as major, medical, academic, and legal studies move forward and, as the *Bredhold* case demonstrates, scientific evidence concerning youth brain development continues to evolve. Given the immediacy of the Otte case, justice may well be best served by openly considering physical and mental youthfulness at the time of violations, including Otte's. Otte is now left, though, with few or no tools with which to successfully argue the legal status of the application of the death penalty to his case.

{¶30} There is now pending before our high court the very issue of whether capital punishment is appropriate for youthful offenders.   For these next several months, as the Ohio Supreme Court deliberates this issue of age-appropriate punishment, respectfully, I would suspend implementation of capital punishment for those who committed capital crimes before 21 years of age.