

RENDERED: MARCH 26, 2020
TO BE PUBLISHED

# Supreme Court of Kentucky

### 2017-SC-000436-TG

COMMONWEALTH OF KENTUCKY                  APPELLANT

          ON TRANSFER FROM COURT OF APPEALS
V.             CASE NO. 2017-CA-001327-MR
       FAYETTE CIRCUIT COURT NO. 14-CR-00161
         HONORABLE ERNESTO SCORSONE

TRAVIS M. BREDHOLD                    APPELLEE

AND

               2017-SC-000536-TG
                    AND
               2017-SC-000537-TG

COMMONWEALTH OF KENTUCKY                  APPELLANT

          ON TRANSFER FROM COURT OF APPEALS
V.      CASE NOS. 2017-CA-001541-MR AND 2017-CA-001542-MR
      FAYETTE CIRCUIT COURT NOS. 15-CR-00584-001-002
         HONORABLE ERNESTO SCORSONE

EFRAIN DIAZ, JR.                       APPELLEES
JUSTIN SMITH

## OPINION OF THE COURT BY JUSTICE HUGHES

### VACATING INTERLOCUTORY ORDERS AND REMANDING

These three consolidated cases present the issue of whether evolving

standards of decency are such that the Eighth Amendment to the United States

Constitution prohibits imposition of the death penalty as to a defendant under twenty-one (21) years of age at the time of his offense. In *Roper v. Simmons*, 543 U.S. 551 (2005), the United States Supreme Court concluded that the Eighth Amendment, applied to the states through the Fourteenth Amendment, proscribes the execution of juvenile offenders over fifteen (15) but under eighteen (18) years of age. *Roper* overruled *Stanford v. Kentucky*, 492 U.S. 361 (1989), a case which had rejected that very age-based argument sixteen years earlier. Citing changes in the national consensus with respect to the death penalty and then-recent psychological and neurobiological research, the *Roper* Court concluded that the social purposes allegedly served by the death penalty, retribution and deterrence, were not justified in the case of offenders under age eighteen (18) due to their youth and immaturity. Appellees Travis Bredhold, Efrain Diaz, Jr., and Justin Smith successfully persuaded the Fayette Circuit Court that the current national consensus and more recent scientific research now support raising the age for death-penalty eligibility to twenty-one (21). After careful consideration, we conclude that this significant constitutional issue was not a "justiciable cause"[1] before the circuit court and is not properly before this Court. At this stage of the criminal proceedings, none of the Appellees has been convicted, much less sentenced, and thus none has standing to raise an Eighth Amendment challenge to the death penalty.

---

[1] Ky. Const. § 113(6).

Accordingly, we are compelled to vacate the interlocutory orders and remand to the trial court for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

A Fayette County grand jury indicted Travis M. Bredhold and charged him with one count of murder, first-degree robbery, theft by unlawful taking over $10,000, trafficking in less than eight ounces of marijuana, possession of drug paraphernalia, and carrying a concealed deadly weapon. Bredhold allegedly robbed a Marathon gas station and fatally shot Mukeshbhai Patel, an employee, on December 17, 2013. Bredhold was eighteen (18) years and five (5) months old at the time of the offenses. 2017-SC-000436-TG.

Efrain Diaz, Jr., and Justin Smith, co-defendants, are charged with the robbery and fatal shooting of Jonathan Krueger on April 17, 2015.[2] A Fayette County grand jury indicted and charged Diaz with one count of murder and two counts of first-degree robbery. Diaz was twenty (20) years and seven (7) months old at the time he allegedly committed the offenses. The same grand jury indicted and charged Smith with one count of murder, two counts of first-degree robbery, and one count each of tampering with physical evidence and first-degree fleeing or evading police. Smith was eighteen (18) years and five (5) months old at the time of the alleged offenses. 2017-SC-000536-TG, 2017-SC-000537-TG.

---

[2] Aaron Gillette, walking with Krueger, was also robbed at gunpoint.

All three Appellees pled not guilty and in all three cases the Commonwealth gave notice of its intent to seek the death penalty. Each Appellee moved the trial court to exclude the death penalty as a sentencing option at trial, specifically asking the trial court to extend the holding of *Roper*, 543 U.S. 551. As noted, *Roper* holds that capital punishment is an unconstitutional penalty for juvenile offenders less than eighteen (18) years old at the time of the offense. Each Appellee requested the trial court to extend the death penalty prohibition to include persons under the age of twenty-one (21) at the time of the offense.

Bredhold and Smith supplemented their respective motions to remove the death penalty with an affidavit of Dr. Ken Benedict, a clinical psychologist and neuropsychologist. Dr. Benedict found Bredhold was about four years behind his peer group in multiple capacities, including the capacity to regulate his emotions and behavior, and that he suffered from a number of mental disorders. As for Smith, Dr. Benedict concluded his executive functions related to planning, anticipating the consequences of his actions, and impulse control are below those of an adult and he too exhibited a number of mental disorders.[3]

The trial court conducted an evidentiary hearing on Diaz's and Smith's motions, hearing Dr. Laurence Steinberg's testimony. Dr. Steinberg, a

---

[3] Diaz had given notice of potential evidence as to mental defect, but it appears evaluations were not complete prior to entry of the trial court's orders declaring Kentucky's death penalty statute unconstitutional.

4

nationally recognized expert in adolescent development, explained current scientific knowledge regarding brain development and its impact on behavior, comparing the maturational differences between individuals less than twenty-one (21) years of age and those twenty-one (21) and older. Dr. Steinberg also supplemented his testimony with a written report. The Commonwealth did not submit any proof. Although the testimony was presented in the Diaz/Smith case, the trial court supplemented Bredhold's record with the Steinberg testimony.

The trial court later entered a separate but similar order in each case declaring Kentucky's death penalty statute unconstitutional under the Eighth Amendment insofar as it permits capital punishment for offenders under twenty-one (21) years of age at the time of their offense. In addition to this general legal conclusion, the court made specific findings regarding Bredhold's and Smith's individual psychological assessments. The trial court concluded that those individual findings provided further support for the exclusion of the death penalty as to Bredhold and Smith individually.

The Commonwealth filed interlocutory appeals and this Court granted the Commonwealth's motions to transfer the appeals from the Court of Appeals pursuant to Kentucky Rule of Civil Procedure (CR) 74.02, finding that the issues raised are of great and immediate public importance and arose during capital litigation, an area exclusively within this Court's appellate jurisdiction. *Skaggs v. Commonwealth*, 803 S.W.2d 573, 577 (Ky. 1990); *Commonwealth v. Guernsey*, 501 S.W.3d 884, 887 (Ky. 2016).

5

## ANALYSIS

In these consolidated appeals we are asked to review the Fayette Circuit Court's decision finding Kentucky's death penalty statute unconstitutional as to defendants who were between the ages of eighteen (18) and twenty-one (21) at the time of their offense. Before reaching this significant inquiry, it is incumbent that we consider whether the issue is properly before us.

"Considerations of propriety, as well as long-established practice, demand that we refrain from passing upon the constitutionality of an act of [the legislature] unless obliged to do so in the proper performance of our judicial function . . . ." *Blair v. United States*, 250 U.S. 273, 279 (1919); *accord Louisville/Jefferson Co. Metro Gov't v. TDC Group, LLC*, 283 S.W.3d 657, 660 (Ky. 2009) (recognizing this Court's "practice of avoiding constitutional questions" unless judicially necessary). *See also Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 346 (1936) (Brandeis, J., concurring) (listing rules used to avoid constitutional questions). As a threshold matter, Kentucky courts do not have constitutional jurisdiction to adjudicate a question raised by a litigant who does not have standing to have the issue decided. *Commonwealth Cabinet for Health & Family Servs., Dep't for Medicaid Servs. v. Sexton by & through Appalachian Reg'l Healthcare, Inc.*, 566 S.W.3d 185, 195 (Ky. 2018). Because the Appellees have yet to be adjudicated guilty and the Commonwealth's power to punish has yet to be invoked, we conclude the question whether Kentucky's death penalty is unconstitutional as to the age-based group identified by Appellees is currently not justiciable. For context, we

6

discuss briefly the parties' positions on the constitutional issue raised before turning to the mandatory considerations of standing and ripeness.

Under Kentucky law, a person convicted of a capital offense, may be sentenced to death pursuant to Kentucky Revised Statute (KRS) 532.030. Imposition of the death penalty, however, is subject to the Eighth Amendment to the United States Constitution which, via the Fourteenth Amendment, prohibits states from imposing cruel and unusual punishments.[4] *Roper*, 543 U.S. at 560 (citations omitted). "While the State has the power to punish, the Amendment stands to assure that this power be exercised within the limits of civilized standards." *Trop v. Dulles*, 356 U.S. 86, 100 (1958). The Eighth Amendment's prohibition of "cruel and unusual punishments" "reaffirms the duty of the government to respect the dignity of all persons." *Roper*, 543 U.S. at 560. Recognizing that the Eighth Amendment "is not fastened to the obsolete but may acquire meaning as public opinion becomes enlightened by a humane justice," *Weems v. United States*, 217 U.S. 349, 378 (1910), the United States Supreme Court has adopted "evolving standards of decency that mark the progress of a maturing society" as a measure to enforce the Constitution's protection of human dignity and to determine which punishments are so disproportionate as to be cruel and unusual. *Trop*, 356 U.S. at 100-01.

A trio of United States Supreme Court decisions, *Thompson v. Oklahoma*, 487 U.S. 815 (1988), *Stanford*, 492 U.S. 361, and *Roper*, 543 U.S. 551, have

---

[4] The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

applied society's evolving standards of decency to address the question of whether the Eighth Amendment prohibits imposition of the death penalty on juveniles of a certain age. In *Thompson*, the Supreme Court determined that society's standards of decency do not permit the execution of any offender under the age of sixteen (16) at the time of the crime. Soon afterward, in *Stanford*, the Supreme Court declined to extend that age range, holding that standards of decency did not prohibit the execution of juvenile offenders who were over fifteen (15) but under eighteen (18) years old at the time of their offense. In *Roper*, decided only sixteen years after *Stanford*, the Supreme Court determined that standards of decency had evolved to proscribe execution of juvenile offenders under eighteen (18) years of age.

Appellees contend that contemporary standards of decency are now such that the Eighth Amendment prohibits the imposition of Kentucky's death penalty on individuals under the age of twenty-one (21) at the time of their offense. The Commonwealth counters that *Roper*, 543 U.S. at 574, designates age eighteen (18) as the bright line for separating adults from juveniles for Eighth Amendment purposes, and thus the trial court erred by declaring Kentucky's death penalty statute unconstitutional when applied to offenders between eighteen (18) and twenty-one (21) years of age.

Presently, by interlocutory appeal, the Commonwealth seeks to vacate the Fayette Circuit Court's orders that declare Kentucky's death penalty statute unconstitutional insofar as it permits capital punishment for a defendant under twenty-one (21) years of age at the time of his offense. Although the

Commonwealth noticed its intent to seek the death penalty as to all three Appellees, at the point their motions were heard by the circuit court (and even now), the cases remained untried and no jury had recommended the death penalty. While death penalty trials are unquestionably more involved than typical felony trials, requiring both group and individual voir dire and presenting issues and procedures unique to the gravity of the penalty sought, the focus of Eighth Amendment analysis is not the trial, but rather the actual penalty imposed. Despite no penalty having been imposed and the clear possibility that death would not be recommended by the jury in any of these cases, the trial court declared prior to trial that Kentucky's death penalty statute is unconstitutional as to these Appellees based on their age. This preemptive ruling was legally inappropriate under controlling precedent.

Constitutional challenges to statutes generally fall within one of two categories: a facial challenge or an as-applied challenge. In order to declare a statute unconstitutional on its face, a court must find that the law is unconstitutional in all its applications. *Commonwealth of Kentucky v. Claycomb by & through Claycomb*, 566 S.W.3d 202, 210 (Ky. 2018) (citations omitted); *Sabri v. United States*, 541 U.S. 600, 609 (2004). "It is a well-established principle that '[a] facial challenge to a legislative Act is . . . the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid.'" *Harris v. Commonwealth*, 338 S.W.3d 222, 229 (Ky. 2011) (quoting *Rust v. Sullivan*, 500 U.S. 173, 183 (1991)). On the other hand, in order to declare a

9

statute unconstitutional as applied, a court must find the law unconstitutional as applied to the challenger's particular circumstances. *See United States v. Salerno*, 481 U.S. 739, 745 n.3 (1987).

No matter the type of constitutional challenge brought, the person(s) bringing the challenge must first demonstrate standing in order for the challenge to be justiciable. *Sexton*, 566 S.W.3d at 196. Otherwise, the trial court does not have jurisdiction to hear and decide the constitutional challenge, whether raised by declaratory judgment action or, as in these cases, by motion. *See id.*; *In re Summers*, 325 U.S. 561, 566–67 (1945); *Flast v. Cohen*, 392 U.S. 83, 101 (1968).[5] It follows that an appellate court does not have jurisdiction to review on its merits an interlocutory appeal arising from a circuit court judgment entered in such circumstances. *Sexton*, 566 S.W.3d at 196-97.

---

[5] As *In re Summers*, 325 U.S. at 566–67 explains:

> A case arises, within the meaning of the Constitution, when any question respecting the Constitution, treatise or laws of the United States has assumed 'such a form that the judicial power is capable of acting on it.' *Osborn v. Bank*, 9 Wheat. 738, 819, 6 L. Ed. 204. The Court was then considering the power of the bank to sue in the federal courts. A declaration on rights as they stand must be sought, not on rights which may arise in the future, *Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 226, 29 S. Ct. 67, 69, 53 L. Ed. 150, and there must be an actual controversy over an issue, not a desire for an abstract declaration of the law. *Muskrat v. United States*, 219 U.S. 346, 361, 31 S. Ct. 250, 255, 55 L. Ed. 246; *Fairchild v. Hughes*, 258 U.S. 126, 129, 42 S. Ct. 274, 275, 66 L. Ed. 499. The form of the proceeding is not significant. It is the nature and effect which is controlling. *Nashville, C. & St. L. Ry. v. Wallace*, 288 U.S. 249, 259, 53 S. Ct. 345, 346, 77 L. Ed. 730, 87 A.L.R. 1191.

Kentucky's constitutional standing doctrine, adopted from *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992), wherein several organizations sought declaratory judgment and an injunction, is outlined in *Sexton*.

> [A]t bottom, for a party to sue in Kentucky, the initiating party must have the requisite constitutional standing to do so, defined by three requirements: (1) injury, (2) causation, and (3) redressability. In other words, "A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."[6] "[A] litigant must demonstrate that it has suffered a concrete and particularized injury that is either actual or imminent . . . ."[7] "The injury must be . . . 'distinct and palpable,' and not 'abstract' or 'conjectural' or 'hypothetical.'"[8] "The injury must be 'fairly' traceable to the challenged action, and relief from the injury must be 'likely' to follow from a favorable decision."[9]

566 S.W.3d at 196.

*Sexton* dealt with initiation of a civil suit; nevertheless, the "standing" principles apply with equal force to this interlocutory motion raised in a criminal proceeding. "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Standing is one of the five major justiciability doctrines which assure that the courts do not

---

[6] *Allen v. Wright*, 468 U.S. 737, 751, 104 S. Ct. 3315, 82 L. Ed.2d 556 (1984), *overruled on other grounds by Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).

[7] *Massachusetts v. EPA*, 549 U.S. 497, 517, 127 S. Ct. 1438, 167 L. Ed.2d 248 (2007) (citing *Lujan*, 504 U.S. at 578, 112 S. Ct. 2130).

[8] *Allen*, 468 U.S. at 751, 104 S. Ct. 3315.

[9] *Id.*

11

address non-existent issues or provide advisory opinions. *Sexton*, 566 S.W.3d at 192-97.[10] In federal constitutional parlance a "case or controversy" is required, Art. III, § 2, Clause 1, while in Kentucky the circuit courts (and consequently the Court of Appeals and this Court exercising appellate jurisdiction) are constitutionally required to address "justiciable causes." Ky. Const. §113(6). Upon review of the standing requirements, it is evident that Appellees' motions are not justiciable at this time.

A litigant must satisfy all prongs of the standing inquiry to invoke a court's jurisdiction in a constitutional challenge. In this case, we need only consider whether Appellees meet the first prong, the injury requirement: whether the litigant "has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged statute or official conduct." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (quoting *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923)). It is well-settled that "[a]llegations of possible future injury do not satisfy the requirements of [standing]." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990). "A threatened injury must be 'certainly impending' to constitute injury in fact." *Id.* (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). These principles regarding the injury necessary to establish standing are incorporated in the United States Supreme Court's jurisprudence explaining the context within which an Eighth Amendment claim may be properly raised. "Eighth Amendment scrutiny is

---

[10] The United States Supreme Court has identified the five major justiciability doctrines as: "(1) the prohibition against advisory opinions, (2) standing, (3) ripeness, (4) mootness, and (5) the political-question doctrines." 566 S.W.3d at 193.

appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions. . . . [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983) (quoting *Ingraham v. Wright,* 430 U.S. 651, 671–72, n.40 (1977)).

In the cases before this Court, if one or more of the Appellees is convicted of a capital offense, the sentencing options are numerous. KRS 532.030(1) provides:

> When a person is convicted of a capital offense, he shall have his punishment fixed at death, or at a term of imprisonment for life without benefit of probation or parole, or at a term of imprisonment for life without benefit of probation or parole until he has served a minimum of twenty-five (25) years of his sentence, or to a sentence of life, or to a term of not less than twenty (20) years nor more than fifty (50) years.

Thus, assuming conviction, the sentencing range for the Appellees would extend from a twenty (20) year-sentence to death. To reiterate, the Appellees have yet to be tried, convicted, or sentenced. "It is just not possible for [the Appellees] to prove in advance that the judicial system will lead to any particular result in [their] case." *Whitmore*, 495 U.S. at 159–60. With the Appellees having not yet suffered a concrete and particularized injury by

13

having the death sentence imposed, no actual or imminent injury exists.[11] At

this point, imposition of the death sentence can only be viewed as hypothetical.

Although we approach the justiciability of these cases under the standing

doctrine, application of the related ripeness doctrine has likewise resulted in

courts dismissing premature claims and vacating premature decisions in the

context of an Eighth Amendment challenge.[12] For example, in *18 Unnamed*

*"John Smith" Prisoners v. Meese*, 871 F.2d 881, 882–83 (9th Cir. 1989), the

Ninth Circuit Court of Appeals vacated a summary judgment in favor of the

government in a case involving an Eighth Amendment challenge to a proposed

double bunking plan as cruel and unusual punishment. The Ninth Circuit,

finding the inmates' claims were not sufficiently concrete to warrant judicial

---

[11] Requiring the litigant to prove "actual injury" "tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982). The gist of the question of standing is has the litigant "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr*, 369 U.S. 186, 204 (1962).

[12] The line between standing and ripeness is not readily drawn. The ripeness doctrine is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *W.B. v. Com., Cabinet for Health & Family Servs.*, 388 S.W.3d 108, 115 (Ky. 2012) (quoting *National Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08, 123 S. Ct. 2026, 155 L. Ed.2d 1017 (2003) (citations omitted)). The overlap between standing and ripeness concepts has led some legal scholars to suggest that the there is little benefit in having a distinct ripeness doctrine. *See, e.g.*, Erwin Chemerinsky, *A Unified Approach to Justiciability*, 22 Conn. L. Rev. 677, 682-83 (1990) ("The standing determination demands that the plaintiff demonstrate that he or she has been or imminently will be injured. Ripeness focuses primarily on whether the matter is premature for review and asks whether the plaintiff has suffered or imminently will suffer an injury. In light of this overlap, little seems to be gained by having a distinct ripeness doctrine.").

intervention, explained that the effects of the proposed double bunking, such as overcrowding, deprivation of essential food, and lack of sanitation, were only speculative, involving "'contingent future events that may not occur as anticipated, or indeed not occur at all.'" *Id.* at 883 (citing *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581 (1985) (quoting 13A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3532 (1984))).

In *Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995), the Eleventh Circuit Court of Appeals upheld the trial court's dismissal of an Eighth Amendment pre-enforcement challenge to a statute that allegedly imposed excessive fines. The Eleventh Circuit described the ripeness doctrine as "ask[ing] whether there is sufficient injury to meet Article III's requirement of a case or controversy and, if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking by the court." *Id.* at 1524 (citation omitted). More particularly, the *Cheffer* court concluded "Eighth Amendment challenges are generally not ripe until the imposition, or immediately impending imposition, of a challenged punishment or fine." *Id.* at 1523 (citing *Meese; Askins v. District of Columbia*, 877 F.2d 94, 97–99 (D.C. Cir. 1989) (challenge to proposed transfer to another prison facility not ripe)).

In *Johnson v. Missouri*, 142 F.3d 1087 (8th Cir. 1998), a case involving the constitutionality of a statute that imposed sanctions on inmates who file frivolous claims, the Eighth Circuit recognized likenesses in the standing and ripeness doctrines: "Although we realize that standing and ripeness are

15

technically different doctrines, they are closely related in that each focuses on whether the harm asserted has matured sufficiently to warrant judicial intervention. . . . Thus, whether this principle is labeled 'standing' or 'ripeness', [the inmates'] claim [is not justiciable]." *Id.* at 1090, n.4 (internal quotations, original alterations, and citations omitted). *See also People v. Stark*, 400 P.2d 923, 928 (Colo. 1965) ("With reference to the argument that the several offenses defined in the statute are punishable by 'cruel and unusual punishments' we hold that until some person has been convicted of a crime and a sentence has been imposed which is then asserted to be 'cruel and unusual' there is no justiciable question presented."); *Floyd v. Filson*, 940 F.3d 1082 (9th Cir. 2019) (challenge to lethal injection protocol not ripe when state has no implementable protocol at the time of the challenge; injury speculative and may never occur); *Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370 (11th Cir. 2019) (challenge to ordinance penalty provision not ripe when no allegations that fine has been imposed or imposition immediately forthcoming).[13]

---

[13] We note cases exist which hold an Eighth Amendment challenge is justiciable prior to the litigant's adjudication of guilt. In *United States v. Jones*, 731 F. Supp. 2d 1275 (M.D. Fla. 2010), the defendant challenged the constitutionality of a statute imposing a minimum mandatory prison sentence of five years. The defendant was indicted on three counts of distributing crack cocaine, a conviction on any one count subjecting him to the minimum mandatory sentence. The *Jones* court concluded that if an injury in fact may be found "where the law has yet to be enforced against the party so long as he can show a well-founded fear of enforcement or imminent threat of prosecution, then surely an injury in fact shall be found where, as here, the party invoking the court's authority has already been indicted and is facing trial." *Id.* at 1280. *United States v. Sanders*, 731 F. Supp. 2d 1261 (M.D. Fla. 2010), contains the same question and analysis. These outlier cases relied primarily (and incorrectly in our view) on *Virginia v. American Booksellers Ass'n*, 484 U.S. 383 (1988), a case involving a First Amendment pre-enforcement facial challenge (providing "well-founded

The Commonwealth has not raised the issue of standing directly,[14] but *Sexton* is clear that "all Kentucky courts have the constitutional duty to ascertain the issue of constitutional standing, acting on their own motion, to ensure that only *justiciable causes* proceed in court, because the issue of constitutional standing is not waivable." *Sexton*, 566 S.W.3d at 192. Thus, while the Appellees have raised a serious question as to whether the death penalty is a disproportionate punishment for offenders in the eighteen (18) to twenty-one (21) year-old range, it is not currently justiciable whether viewed as a lack of standing or a matter of ripeness.

Rather recently, in *Guernsey*, 501 S.W.3d 884, this Court addressed a challenge similar to that raised in this case and decided that prior to trial the circuit court could not adjudicate the defendants' motion to preclude the Commonwealth from seeking the death penalty as a constitutionally disproportionate penalty. In *Guernsey*, as here, the Commonwealth sought review of a Fayette Circuit Court's pretrial order granting the defendants'

---

fear" language and explaining danger of challenged statute is largely self-censorship), and *Younger v. Harris*, 401 U.S. 37 (1971), a case involving allegations that both the existence and the enforcement of a criminal statute impaired the plaintiff's First Amendment rights. Unlike an Eighth Amendment claim, a First Amendment claim, particularly a facial challenge, is subject to a relaxed ripeness standard because of the special need to protect against the chilling of the right of free expression. *See Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973); *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir. 2002).

[14] The Commonwealth cited *Commonwealth v. Guernsey*, 501 S.W.3d 884 (Ky. 2016), discussed *infra*, for the premise that statutorily the trial court was prohibited from prematurely (prior to trial) removing the death penalty as a sentencing option. The trial court considered *Guernsey*, but as reflected in its orders, believed it could address Appellees' constitutional argument.

17

motion to exclude death as a sentencing option in the event of conviction. The case was noticed as a death penalty case because the murder was allegedly committed in the course of a first-degree robbery, which occurred in the context of drug-trafficking. The circuit court concluded that, based on its knowledge of the facts following a pretrial hearing, capital punishment would be constitutionally disproportionate in that particular case and perhaps also comparatively disproportionate pursuant to KRS 532.075(3). *Id.* at 887.

This Court, in a unanimous decision, clarified that the KRS 532.075(3) comparative proportionality review is a function assigned to the Supreme Court, but that the circuit court may determine whether a death sentence would be inherently disproportionate. *Id.* at 888-90. As this Court explained, however, the circuit court may only properly exercise this authority once the Commonwealth has had the opportunity to present all of its evidence at trial and a death sentence has actually been recommended. *Id.* at 892.

We concluded:

> While Guernsey and Jones correctly note that the death penalty has fallen into disfavor in recent years, it remains a viable penalty in Kentucky authorized by our legislature in specific types of cases, including those in which the defendant is charged with committing murder in the course of the commission of first-degree robbery. The Fayette County Grand Jury indicted the Appellees for those very offenses, and the Commonwealth, as is its statutory right, subsequently noticed its intent to seek the death penalty. Although at the conclusion of trial, should the jury recommend the death penalty for either of the Appellees, the circuit court will have discretion to determine whether that sentence is constitutionally proportionate, there is no authority for exercising that discretion pretrial before all relevant evidence is actually heard. Accordingly, the Fayette Circuit Court's Order Excluding the Death Penalty is vacated . . . .

18

*Id.* at 894.[15]

Even though *Guernsey* involved a disproportionality argument that focused on the particular facts of a case that had not yet been tried to verdict while the cases currently before this Court raise a purely legal issue, judicial determination of Appellees' age-based challenge to the death penalty is still not appropriate prior to trial. Regardless of the merits of the circuit court's Eighth Amendment analysis (about which we express no opinion), as in *Guernsey* the lower court erred by treating the Appellees' pretrial motions as justiciable and removing from the jury's consideration a penalty that is currently viable under Kentucky law.

Consistent with our conclusion regarding the current non-justiciability of the Appellees' constitutional challenge, none of the cases they cite support this Court addressing pretrial whether Kentucky's death penalty is constitutionally inappropriate for an offender in the eighteen (18) to twenty-one (21) year old range.[16] All cases cited involving Eighth Amendment death or other penalty

---

[15] On remand, the co-defendants in *Guernsey* reached plea agreements with the Commonwealth. Robert Guernsey was sentenced to twenty-three (23) years for second-degree manslaughter and first-degree robbery, and Trustin Jones was sentenced to forty (40) years for murder and first-degree robbery.

[16] This is also true of other cases not included in Appellees' list: *Melton v. Secretary, Florida Dep't of Corrs.*, 778 F.3d 1234 (11th Cir. 2015); *United States v. Mitchell*, 502 F.3d 931 (9th Cir. 2007); *In re Garner*, 612 F.3d 533 (6th Cir. 2010); *In re Phillips*, No. 17-3729, 2017 WL 4541664 (6th Cir. July 20, 2017); *In re Cathey*, 857 F.3d 221 (5th Cir. 2017); *Tercero v. Stephens*, 738 F.3d 141 (5th Cir. 2013); *State v. Myers*, 114 N.E.3d 1138 (Ohio 2018); *Foster v. State*, 258 So. 3d 1248 (Fla. 2018); *People v. Powell*, 425 P.3d 1006 (Cal. 2018); *People v. Gamache*, 227 P.3d 342 (Cal. 2010); *Williams v. State*, 67 S.W.3d 548 (Ark. 2002); *State v. Christeson*, 50 S.W.3d 251 (Mo. 2001); *Samra v. State*, 771 So. 2d 1108 (Ala. Crim. App. 1999), *aff'd* 771 So. 2d 1122 (Ala. 2000); *Butts v. State*, 546 S.E.2d 472 (Ga. 2001); *Wilson v. State*, 525 S.E.2d 339 (Ga. 1999).

challenges, inclusive of United States Supreme Court, federal circuit and state cases, are appeals by individuals who had already been convicted and sentenced:[17] *Moore v. Texas*, 137 S. Ct. 1039 (2017); *Hall v. Florida*, 572 U.S. 701 (2014); *Miller v. Alabama*, 567 U.S. 460 (2012); *Graham v. Florida*, 560 U.S. 48 (2010); *Kennedy v. Louisiana*, 554 U.S. 407 (2008); *Roper v. Simmons*, 543 U.S. 551 (2005); *Atkins v. Virginia*, 536 U.S. 304 (2002); *Stanford v. Kentucky*, 492 U.S. 361 (1989), *abrogated by Roper v. Simmons*, 543 U.S. 551 (2005); *Penry v. Lynaugh*, 492 U.S. 302 (1989), *abrogated by Atkins v. Virginia*, 536 U.S. 304 (2002); *Johnson v. Texas*, 509 U.S. 350 (1993); *Thompson v. Oklahoma*, 487 U.S. 815 (1988); *Eddings v. Oklahoma*, 455 U.S. 104 (1982); *Coker v. Georgia*, 433 U.S. 584 (1977); *Woodson v. North Carolina*, 428 U.S. 280 (1976); *Gregg v. Georgia*, 428 U.S. 153 (1976); *United States v. Marshall*, 736 F.3d 492 (6th Cir. 2013); *Branch v. State*, 236 So. 3d 981 (Fla. 2018); *Otte v. State*, 96 N.E.3d 1288 (Ohio 8th Dist. App. 2017); *Powell v. Delaware*, 153 A.3d 69 (Del. 2016); *Thompson v. State*, 153 So. 3d 84 (Ala. Crim. App. 2012); *Romero v. State*, 105 So. 3d 550 (Fla. 1st Dist. App. 2012); *Mitchell v. State*, 235 P.3d 640 (Okla. Crim. App. 2010); *Morton v. State*, 995 So. 2d 233 (Fla. 2008);

---

[17] Within the cited cases, *United States v. Lopez-Cabrera*, No. S5 11Cr.1032, 2015 WL 3880503 (S.D.N.Y. June 23, 2015), is one case that does not precisely follow this guiding principle. Prior to sentencing, three defendants convicted of murder in aid of racketeering sought relief from the statutory mandatory minimum sentence of life imprisonment. As Appellees note, *Lopez-Cabrera*, an unpublished opinion, is not a death penalty case.

*Hill v. State*, 921 So. 2d 579 (Fla. 2006); *Bowling v. Commonwealth*, 224 S.W.3d 577 (Ky. 2006).[18]

Undoubtedly, the death penalty's unique "severity and irrevocability," *Gregg v. Georgia*, 428 U.S. 153, 187 (1976) (citations omitted), weighs heavily on a defendant who has been notified by the Commonwealth of its intent to seek the death penalty. However, when a defendant is tried and convicted of a capital crime, the principle that capital punishment must be limited to those whose extreme culpability makes them the most deserving of execution is implemented through a carefully designed capital sentencing process. *Roper*, 543 U.S. at 568 (citation omitted). The sentencing phase allows the defendant the opportunity to present mitigating evidence to convince the jury that death is not the appropriate punishment. KRS 532.025(1)(b). "[W]here sentencing discretion is granted, it generally has been agreed that . . . 'possession of the fullest information possible concerning the defendant's life and characteristics' is '[h]ighly relevant-*if not essential*-[to the] selection of an appropriate sentence . . . .'" *Lockett v. Ohio*, 438 U.S. 586, 602–03 (1978) (quoting *Williams v. New York*, 337 U.S. 241, 247 (1949) (emphasis added in *Lockett*)); *see also Furman*

---

[18] *New Jersey ex rel. D.B.*, No. A-353-84T5 (N.J. Super. App. Div. Feb. 19, 1985) (unpublished), a juvenile death penalty case, is similar to the case before this Court. By interlocutory appeal, the defendant argued that application of the capital punishment statute to a juvenile was unconstitutional. The New Jersey appellate court refused to decide the issue because the defendant had yet to be convicted and the imposition of the death penalty at that point was merely speculation. *See also State v. Smith*, 495 A.2d 507, 510 (N.J. Super. Law. Div. Apr. 19, 1985) (applying *New Jersey ex rel. D.B.* to a juvenile defendant's pretrial motion challenging New Jersey's death penalty statute as cruel and unusual punishment as to a juvenile and declining to decide the speculative constitutional question).

*v. Georgia*, 408 U.S. 238, 245-46 (1972) (Douglas, J., concurring); *id.* at 297-98

(Brennan, J., concurring); *id.* at 339 (Marshall, J., concurring); *id.* at 402-03

(Burger, C. J., dissenting); *id.* at 413 (Blackmun, J., dissenting). Thus, as

reflected in KRS 532.025(2) which allows the jury to consider any mitigating

circumstances otherwise authorized by law and in KRS 532.025(2)(b)'s

delineated mitigating circumstances, which includes the youth of the defendant

at the time of the crime, wide latitude is given to capital defendants to raise as

a mitigating factor "any aspect of [his or her] character or record and any of the

circumstances of the offense that the defendant proffers as a basis for a

sentence less than death." *Lockett*, 438 U.S. at 604.[19]

As to this case, if the Appellees go to trial and are convicted, the jury

would presumably hear the age-based arguments made before this Court,

along with each Appellee's individual circumstances when determining the

---

[19] The death penalty remains relatively rare in the Commonwealth. Currently, twenty-seven individuals are on death row in Kentucky. Kentucky Department of Corrections, *Death Row Inmates*, https://corrections.ky.gov/Facilities/AI/Pages/deathrowinmates.aspx. The sentencing dates for these individuals range between March 1980 and October 2014. *Id.*; Death Penalty Information Center, *Sentencing Data*, https://deathpenaltyinfo.org/facts-and-research/sentencing-data/death-sentences-in-the-united-states-from-1977-by-state-and-by-year. Between 1976 and 2019, Kentucky executed three individuals (in 1997, 1999, and 2008) with two of those waiving further challenges to their sentence. Death Penalty Information Center, *Executions*, https://deathpenaltyinfo.org/executions/execution-database?filters%5Bstate%5D=Kentucky. Of those currently on death row, three are sentenced to death for crimes committed when they were over eighteen (18) but under twenty-one (21) years of age: Ronnie Lee Bowling, date of birth 12/05/1968, date of first of two murders 01/20/1989; Karu Gene White, date of birth 11/18/1958, date of three murders 02/12/1979; William (Bill) Harry Meece, date of birth 10/18/1972, date of three murders 02/26/1993. Kentucky Department of Corrections, *supra*; *Meece v. Commonwealth*, 348 S.W.3d 627 (Ky. 2011) (Meece committed the murders Feb. 26, 1993, but was not indicted until Feb. 2003). (Websites last viewed Feb. 8, 2020.)

Appellee's sentence. If the jury recommends the death penalty for any of the three Appellees, the Appellee will have review of the appropriateness of that sentence by both the trial judge, KRS 532.070, and this Court, KRS 532.075(3), through direct appeal and post-conviction review. We reiterate that KRS 418.075 requires notice to the Attorney General in order to preserve for our review a constitutional challenge to a statute. *Craft v. Commonwealth*, 483 S.W.3d 837, 840 (Ky. 2016); *Benet v. Commonwealth*, 253 S.W.3d 528, 532 (Ky. 2008) (compliance with the notification provisions of KRS 418.075 is mandatory even in criminal cases). Thus, in the event a jury recommends death, a defendant challenging that sentence on constitutional grounds must give notice to the Attorney General so he or she can participate at the trial court level as provided by KRS 418.075.

In summary, only when, if ever, one or more of these Appellees is convicted and a jury recommends the death penalty will the circuit court be confronted with an Eighth Amendment issue presented by an individual with standing to raise it. Should that occur, this Court anticipates that the evidentiary record regarding the psychological and neurobiological characteristics of offenders under twenty-one (21) years old generally, as well as of the Appellee specifically, will be fully developed by all parties and both the

23

trial court and this Court will have the scientific evidence necessary to address a truly justiciable constitutional issue.[20]

## CONCLUSION

Because none of the Appellees has standing to present the issue of whether Kentucky's death penalty constitutes "cruel and unusual" punishment under the Eighth Amendment as to defendants ages eighteen (18) to twenty-one (21) at the time of their offense, neither the circuit court nor this Court is presented with a justiciable cause. Accordingly, the Fayette Circuit Court's orders declaring Kentucky's death penalty statute unconstitutional as applied to these Appellees are vacated and these cases are remanded to the circuit court for further proceedings consistent with this Opinion.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Daniel Jay Cameron
Attorney General of Kentucky

Matthew Robert Krygiel
Jason Bradley Moore
Assistant Attorneys General
Office of the Attorney General

---

[20] Additionally, Appellees will have the opportunity to present this evidence to the jury in the penalty phase for their consideration as they debate the propriety of the death penalty for a particular offender under age twenty-one (21).

COUNSEL FOR APPELLEE
TRAVIS M. BREDHOLD

Timothy G. Arnold
Emily Holt Rhorer
Brandon Neil Jewell
Department of Public Advocacy

COUNSEL FOR APPELLEE
EFRAIN DIAZ, JR.:

Timothy G. Arnold
Department of Public Advocacy

COUNSEL FOR APPELLEE
JUSTIN SMITH:

Brandon Neil Jewell
Kim Angela Green
Department of Public Advocacy


COUNSEL FOR AMICUS CURIAE:
THE COLORADO JUVENILE DEFENSE CENTER
AND THE COLORADO CRIMINAL DEFENSE BAR

Rebecca Ballard Diloreto
The Institute for Compassion in Justice

COUNSEL FOR AMICUS CURIAE:
NATIONAL ASSOCIATION FOR PUBLIC DEFENSE
AND KENTUCKY ASSOCIATION OF CRIMINAL
DEFENSE LAWYERS

David Michael Ward
Kentucky Association of Criminal Defense
Lawyers

Amy Elizabeth Halbrook
Salmon P. Chase College of Law

COUNSEL FOR AMICUS CURIAE:
ATLANTIC CENTER FOR CAPITAL
REPRESENTATION; CAMPAIGN FOR FAIR
SENTENCING OF YOUTH; CAMPAIGN FOR
YOUTH JUSTICE; CENTER FOR LAW, BRAIN
AND BEHAVIOR; CENTER ON WRONGFUL
CONVICTIONS OF YOUTH; CHILDREN &
FAMILY JUSTICE CENTER; FAIR PUNISHMENT
PROJECT; FLORIDA CENTER FOR CAPITAL
REPRESENTATION; JUSTICE LAB AT COLUMBIA
UNIVERSITY; PHILLIPS BLACK INC.; RODERICK AND
SOLANGE MACARTHUR JUSTICE CENTER;
SOUTHERN POVERTY LAW CENTER; YOUTH FIRST;
YOUTH SENTENCING & REENTRY PROJECT

Acena Johnson Beck
Children's Law Center, Inc.

COUNSEL FOR AMICUS CURIAE:
JUVENILE LAW CENTER AND CHILDREN'S LAW
CENTER, INC.

Acena Johnson Beck
Children's Law Center, Inc.

Marsha L. Levick
Juvenile Law Center